| | |
|---|---|
| **UNITED STATES**<br><br>**v.**<br><br>**ESTES CARTER THOMPSON III** | **Docket No. 24-CR-10107** |

## DEFENDANT'S MOTION TO DISMISS

The defendant, Estes Carter Thompson, moves to dismiss the indictment charging him with one count of sexual exploitation of a child and one count of possession of child pornography. The indictment must be dismissed for a number of reasons.

First, the indictment violates the Fifth and Sixth Amendments and Rule 7(c)(1) because it merely restates broad generically stated statutory text without making factual allegations. Because an insufficient indictment cannot be remedied with a bill of particulars, Mr. Thompson moves to dismiss the indictment for failing to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). If the Court denies the motion to dismiss, Mr. Thompson moves in the alternative for an order requiring the government to issue a bill of particulars.

Second, Counts One and Two should be dismissed for lack of venue. Fed. R. Crim. P. 12(b)(3)(A)(i). Although the indictment contains no factual allegations, to the extent that the government may rely on the facts alleged in the complaint affidavit, those facts fail to establish that Mr. Thompson committed criminal acts in the District of Massachusetts. As a result, there is no venue in this District to prosecute the charges and they must be dismissed.

Third, Count One must be dismissed for the additional reason that, as a matter of law, the secret recording of a nude minor engaging in an ordinary daily activity (i.e., using the bathroom) is not a depiction of a minor engaging in "sexually explicit conduct" under 18 U.S.C. § 2251(a).

The only potential visual depiction at issue in Count One is a recording of a minor using a bathroom and not engaging in any sexual or sexually suggestive activity of any kind. Therefore, even if the government did adequately allege an offense in Count One – which, as noted above, it did not because it contains no factual allegations – the government cannot sufficiently allege that Mr. Thompson used (or employed, persuaded, induced, enticed, or coerced) a minor to engage in any sexually explicit conduct because that recording does not show the minor (or anyone else) engaging in sexually explicit conduct within the meaning of 18 U.S.C. § 2251(a).

Fourth, to the extent that videos and images of minors using the bathroom form the basis of Count Two, Count Two must also be dismissed for the same reasons as Count One. A recording of a minor using a bathroom is not a depiction of a minor engaging in "sexually explicit conduct" as that term is defined in the applicable child pornography statutes. If, on the other hand, the government intends to use AI-generated images as the basis of its allegations in Count Two, Count Two must be dismissed because this type of "virtual child pornography" is not prohibited under the federal child pornography laws. Under either theory of the government's case, Count Two must be dismissed for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v).

For these reasons, the indictment must be dismissed.

## BACKGROUND[1]

On September 2, 2023, a fourteen-year-old girl (named "Minor A" in the charging documents), her minor sibling, and her parents were passengers onboard American Airlines flight 1441, departing from Charlotte, North Carolina at 8:04 AM and landing in Boston, Massachusetts at 9:57 AM. Mr. Thompson was an American Airlines flight attendant working on the flight. The

---

[1] This narrative is for the purpose of this Motion only. It is based on the charging documents and materials produced by the prosecution in discovery. Mr. Thompson does not concede that any facts or allegations are true or accurate.

government alleges that at approximately 9 AM, as the plane flew over New Jersey[2], Minor A went to use one of the airplane lavatories. According to the government, Mr. Thompson approached Minor A as she was waiting to use the bathroom and told her that the first-class lavatory was open for her to use. The government alleges that Mr. Thompson escorted Minor A toward the first-class lavatory. Mr. Thompson allegedly told Minor A that he had to wash his hands before she went into the bathroom and that he told her that the toilet seat was broken. Mr. Thompson then entered the bathroom.

When Mr. Thompson left the bathroom, Minor A entered it. According to the government, when she walked into the bathroom, Minor A saw red stickers on the underside of the toilet seat lid, which was open. The stickers were labeled "INOPERATIVE CATERING EQUIPMENT – REMOVE FROM SERVICE." Minor A partially undressed and used the toilet. After she had used the toilet, Minor A noticed an iPhone attached to the toilet lid protruding out from underneath the red stickers. The flash of the iPhone was illuminated. Minor A used her phone to take a picture of the stickers and concealed iPhone. Minor A then left the bathroom. According to the government, Mr. Thompson immediately entered the bathroom after her.

Minor A returned to her seat, showed the picture she had taken from the bathroom to her parents, and told them what had occurred. Minor A's mother and father confronted the flight attendants about the concealed iPhone in the bathroom. Minor A's father confronted Mr. Thompson directly and demanded to see his phone. As Mr. Thompson unlocked his iPhone and scrolled through it, Minor A's father took the phone from him and gave it to another flight attendant, who also tried to look through the phone. Eventually Mr. Thompson took his phone back and the other flight attendants notified the Captain of the situation. According to the

---

[2] Information provided by the government in discovery indicates that at 9 AM, the plane's coordinates were approximately 39.63°, -75.17°, which is in the southern half of New Jersey.

government, shortly thereafter, Mr. Thompson went back into the lavatory and locked himself inside for approximately three to five minutes. When he left the lavatory, the flight was beginning its descent and Mr. Thompson returned to his duties in the main cabin.

When the flight landed in Boston, troopers from Massachusetts State Police (MSP) spoke with Mr. Thompson – first on the plane and then in Terminal B of Logan Airport. The government claims that in those conversations, Mr. Thompson denied knowledge of the recording or attempted recording of Minor A. The government also claims that Mr. Thompson gave the troopers consent to look at his phone. Mr. Thompson was taken back to the MSP Troop F Detective Unit, where he was advised of his Miranda rights and given a rights form. Mr. Thompson declined to speak further to law enforcement without an attorney present, and he left. MSP ultimately kept Mr. Thompson's phone and suitcase at the Troop barracks.

On September 19, 2023, the FBI obtained search warrants for Mr. Thompson's phone, suitcase, and iCloud account. When agents executed the warrant for the suitcase, they located Mr. Thompson's passport as well as eleven red stickers that matched the stickers Minor A had seen on the toilet seat on board the September 2 flight. When agents searched Mr. Thompson's phone, they gathered three key pieces of information. First, investigators determined that the phone was associated with Apple ID [ect0504@gmail.com](mailto:ect0504@gmail.com). Second, they learned that the phone had been reset to factory settings at 9:31 AM on September 2, 2023, then had connected to "americanairlinesinflight.com" at 9:34 AM that same day. This was, according to the government, approximately 30 minutes after Minor A took a photograph of the iPhone attached to the toilet seat. Third, as a result of the factory reset, investigators found no images or videos on Mr. Thompson's phone.

When investigators searched Mr. Thompson's iCloud account, they identified what appeared to be four additional instances other than that involving Minor A in which Mr. Thompson recorded a minor using the lavatory on an aircraft. They include: (1) a video created on August 23, 2023 of "Minor B," age 7, (2) a video created on August 15, 2023 of "Minor C," age 11, (3) a video created on July 26, 2023 of "Minor D," age 14, and (4) a video created on January 26, 2023 of "Minor E," age 9. All of these videos depicted the minors partially undressed and using the toilet. Investigators also discovered still images taken from these videos, as well as modified versions of the Minor B, Minor C, and Minor D videos (i.e. the videos were shortened in length and modified to play in slow motion).

Additionally, investigators discovered over 50 images of a child ("Minor F," 9 years old) who was flying on a plane as an unaccompanied minor. The images were of Minor F seated and awake and then sleeping. Another set of images were screenshots of a video of Minor F getting out of her seat and exiting the aircraft, with some images focused on Minor F's clothed buttocks. Finally, investigators located images created by AI that the government claims depict child pornography. The government alleges that Mr. Thompson possessed all of these materials in his iCloud account on September 2, 2023.[3]

Months later, on January 9, 2024, the government filed a Complaint in the District Court of Massachusetts charging Mr. Thompson with one count of sexual exploitation of a child and one count of possession of child pornography. Mr. Thompson was not in the District of Massachusetts when the complaint was filed. He was arrested in Virginia on January 18, 2024, and his first appearance was before the court in the Western District of Virginia on January 23, 2024. At that appearance, Mr. Thompson was remanded to custody. He was eventually transported to the District

---

[3] Law enforcement agents did not locate any videos or photos of Minor A using the lavatory in Mr. Thompson's iPhone or iCloud account.

of Massachusetts, where he made his first appearance on February 20, 2024. The government subsequently filed an indictment on April 25, 2024, charging Mr. Thompson with one count of Sexual Exploitation of a Child and Attempt in violation of 18 U.S.C. § 2251(a) and (e) and one count of Possession of Child Pornography and Attempt in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2)).

As to Count One, the indictment states:

On or about September 2, 2023, in the District of Massachusetts, and elsewhere, the defendant,

Estes Carter Thompson III,

employed, used, persuaded, induced, enticed, and coerced a minor, "Minor A" (YOB 2009), to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and attempted to do so, and knew and had reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce. All in violation of Title 18, United States Code, Sections 2251(a) and (e).

Indictment, ECF No. 19, at 1-2.

As to Count Two, the indictment states:

On or about September 2, 2023, in the District of Massachusetts, and elsewhere, the defendant,

Estes Carter Thompson III,

knowingly possessed, and attempted to possess, material that contained one and more images of child pornography, as defined in Title 18, United States Code, Section 2256(8), that involved a prepubescent minor and a minor who had not attained 12 years of age, and that had been mailed, and shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, and shipped and

transported in and affecting interstate and foreign commerce by any means, including by computer. All in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2).

Indictment, ECF No. 19, at 3. The indictment contains no other allegations of law or fact.

## ARGUMENT

### I. The Indictment Should Be Dismissed Because It Repeats Broad Generic Statutory Language Without Factual Allegations.

An indictment may repeat statutory language when that language is narrowly drawn so that the defendant's alleged conduct is clear. However, an indictment that repeats broad generically stated statutory text without descending to specific factual allegations violates the Fifth and Sixth Amendments and Rule 7(c)(1) of the Federal Rules of Criminal Procedure. So is the case here. The indictment against Mr. Thompson restates the broad generic language of the statute without alleging specific factual allegations concerning his conduct. The indictment does not allege what Mr. Thompson did to "employ, use, persuade, induce, entice, and coerce" Minor A or what constituted "sexually explicit conduct" in Count One. Nor does it make factual allegations regarding what material he "knowingly possessed, and attempted to possess" in Count Two. Because a bill of particulars cannot save an invalid indictment, the Court should dismiss the indictment.

If the Court finds, contrary to Mr. Thompson's position, that the indictment is constitutionally sufficient, Rule 7(f) empowers the Court to direct the filing of a bill of particulars. Fed. R. Crim. P. 7(f). The Court should exercise its broad discretion and order the government to produce a bill of particulars.

### a. The indictment should be dismissed because it repeats broad generic statutory language without factual allegations.

For purposes of a motion to dismiss, the court must look to the face of the indictment and assume that the factual allegations made therein are true. *United States v. Sampson*, 371 U.S. 75, 76 (1962); *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014). When considering the face of the indictment, the focus remains on the language used to charge the crimes. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictment returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).

An indictment is meant to satisfy at least two fundamental constitutional provisions. First, an indictment satisfies the Sixth Amendment's notice requirement by providing the nature and circumstances of the alleged crime so that the accused may meet the charge and defend himself. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970). Second, an indictment satisfies the Fifth Amendment's edict that criminal cases be indicted by a grand jury and that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960).

To be constitutionally sufficient, the indictment must first contain the elements of the alleged crime. *Hamling*, 418 U.S. at 117. The indictment may allege elements using "the words of the statute itself, [] [when], those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements …" *Russell*, 369 U.S. at 765 (brackets added); *Hamling*, 418 U.S. at 117. If the statute uses broad generic terms, then the indictment must "descend to the particulars" and provide factual allegations that, when assumed true, would

constitute the crime alleged. *Russell*, 369 U.S. at 765 (citing *United States v. Cruikshank*, 92 U.S. 542, 558 (1875); *United States v. Simmons*, 96 U.S. 360, 362 (1877); and *United States v. Hess*, 124 U.S. 483, 487 (1888)). Otherwise said, an indictment that restates broad generically worded statutory text must marry the elements of the offense with factual allegations to satisfy the Fifth and Sixth Amendments. Rule 7(c)(1) is in accord; it requires the indictment make "a plain, concise, and definite written statement of the *essential facts constituting the offense charged*…" (emphasis added).

That a broad generically worded indictment must allege elements together with factual allegations is neither new nor novel. The Supreme Court spoke to this requirement nearly 150-years ago saying, "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *Cruikshank*, 92 U.S. at 558. The Supreme Court has not repudiated this requirement, but instead, has repeated it: "[An indictment] must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117-18; *Russell*, 369 U.S. at 765.

Federal courts, including the First Circuit, have ordered dismissal of indictments that merely repeated broadly worded statutory text without specific factual allegations. *Tomasetta*, 429 F.2d at 979 (an indictment accusing the defendant of making threats by unstated means to an unnamed person on a particular day in a particular city requires dismissal); *United States v. Nance*, 533 F.2d 699, 701-03 (D.C. Cir. 1976) (reversing and dismissing where the indictment failed to specify what false pretenses were involved); *United States v. Walsh*, 194 F.3d 37, 44 (2nd Cir. 1999) ("The Indictment Clause of the Fifth Amendment requires that an indictment contain some

amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."); *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) (reversing and dismissing where a drug conspiracy indictment tracked statutory language without facts or circumstances pertaining to the conspiracy); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017) (Jackson, D.J.) (dismissing seven child pornography related crimes for failing to make factual allegations).

Here, the indictment alleges broad generically stated statutory text without factual allegations and thereby violates the Fifth and Sixth Amendments and Rule 7(c)(1). The indictment alleges in Count One that Mr. Thompson "employed, used, persuaded, induced, enticed, and coerced a minor" to engage in "any" sexually explicit conduct. But these are broad generic statutory terms that require factual specificity, and there are no facts pled in the indictment.

Similarly, Count Two alleges that Mr. Thompson "knowingly possessed, and attempted to possess, material that contained one or more images of child pornography" on September 2, 2023 in the District of Massachusetts. However, the indictment contains no facts concerning what Mr. Thompson allegedly possessed. The complaint affidavit describes multiple images and videos that could theoretically be the basis for Count Two. Those images and videos fall into two categories: (1) videos and photos taken on airplanes and (2) "virtual" child pornography created by AI. The indictment fails to identify which of these materials, if any, Mr. Thompson allegedly "knowingly possessed, and attempted to possess," and how he did so. This failure is particularly problematic because the two categories of materials that could possibly form the basis of Count Two are defined differently in 18 U.S.C. § 2256(8). Depending on the materials the government chooses to proceed on to prove Count Two, Mr. Thompson would have to change his defense and legal strategy. Mr.

Thompson cannot defend himself, nor ensure that he is not placed twice in jeopardy for the same offense, without knowing what the allegations are against him.

In sum, as Counts One and Two stand now, they "fail[] entirely to describe in any meaningful way the acts of the defendant that constitute the offenses charged." *Hillie*, 227 F. Supp. 3d at 73. Despite the breadth of the terms used, the indictment does not descend to the particulars by making specific factual allegations. *Russell*, 369 U.S. at 765 (citing *Cruikshank*, 92 U.S. at 558). This lack of specificity precludes Mr. Thompson from defending against the indictment and from twice being placed in jeopardy for the same offense. Moreover, the omissions would permit Mr. Thompson to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770.

A bill of particulars cannot correct the indictment. "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770. "This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Id.*; *United States v. Thomas*, 444 F.2d 919, 922-23 (D.C. Cir. 1971) (reversing because the indictment lacked factual particularity and finding the error could not have been remedied by a bill of particulars); *Hillie*, 227 F. Supp. 3d at 80-82 (dismissing an indictment and holding that a bill of particulars was no remedy). As a result, the indictment should be dismissed.

> **b. If the Court does not dismiss the indictment, it should order the government to produce a bill of particulars.**

If the Court finds, contrary to Mr. Thompson's position, that the indictment need not be dismissed, Mr. Thompson requests the Court order the government to produce a bill of particulars. Rule 7(f) "specifically empowers the trial court to direct the filing of a bill of particulars and gives the trial court "very broad discretion in ruling upon requests for such bills." *Will v. United States*,

389 U.S. 90, 98-99 (1967). "The purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir. 1989); *United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir. 1993) (holding that a motion for a bill of particulars should be granted "only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause").

Here, the indictment alleges only broad, generic terms from the statutes but includes zero facts to support the allegations. The government has failed to identify not only the conduct of Mr. Thompson's that allegedly constitutes the offenses of sexual exploitation of a child and possession of child pornography, but also what conduct occurred in the District of Massachusetts. Mr. Thompson should not learn for the first time during opening statements at trial what proscribed conduct the government has alleged. If the Court does not dismiss the indictment, it should order that the government furnish a bill of particulars.

## II.     Counts One and Two Must be Dismissed for Improper Venue.

Far from "an arcane technicality," venue "involves 'matters that touch closely the fair administration of criminal justice and public confidence in it.'" *United States v. Salinas*, 373 F.3d 161, 162 (1st Cir. 2004) (quoting *United States v. Johnson*, 323 U.S. 273, 276 (1944)). "It is common ground that a criminal defendant has a right to be tried in an appropriate venue." *Id.* at 164. "The importance of this right is emphasized by the fact that it is mentioned not once, but twice, in the text of the Constitution." *Id.* (citing U.S. Const. art. III, § 2, cl. 3; *id.* amend. IV). "Echo[ing] the constitutional commands" concerning proper venue, *id.* (quoting *United States v.*

*Cabrales*, 524 U.S. 1, 6 (1998)), Congress has issued "an explicit directive that limits a criminal prosecution to 'a district in which the offense was committed,'" *id.* (citing Fed. R. Crim. P. 18).

"This guarantee of a trial in the state and district in which the crime was committed includes the indictment process." *United States v. Percuoco*, 630 F. Supp. 784, 786-87 (D. Mass. 1986) (allowing pre-trial motion to dismiss indictment for lack of venue), *aff'd sub nom. United States v. Griffin*, 814 F.2d 806 (1st Cir. 1987). Thus, if an indictment is returned in "a district other than where the crime was committed," it "must be dismissed." *Id.* at 786; *see, e.g.*, *United States v. Hernandez-Hernandez*, 291 F. Supp. 2d 490, 491-92 (W.D. Tex. 2003) (allowing pre-trial motion to dismiss indictment for lack of venue); *see also* Fed. R. Crim. P. 12(b)(3)(A)(i) (requiring defendant to challenge improper venue before trial). The prosecution, as the party with the "first crack at selecting the venue . . . must prove by a preponderance of the evidence that venue is proper as to *each individual count*." *Salinas*, 373 F.3d at 164 (emphasis added).

The "*locus delicti*" of an offense must be determined from "the nature of the crime alleged and the location of the act or acts constituting it." *Id.* To make that determination, a court must "identify[] the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)). "In determining the nature of the crime for the purposes of venue, the 'focus of this test is on the *conduct* comprising the offense.'" *United States v. Seward*, 967 F.3d 57, 60 (1st Cir. 2020) (emphasis added) (quoting *Salinas*, 373 F.3d at 164)). Other elements that do not form a part of the defendant's conduct, including "circumstance element[s]," are not considered in determining the place of the crime. *Rodriguez-Moreno*, 526 U.S. at 280 n.4.

### a. Count One – Sexual Exploitation of a Child and Attempt (18 U.S.C. § 2251(a))

Here, the conduct constituting the offense of sexual exploitation of a child is "employing, using, persuading, inducing, enticing, or coercion of a minor to engage in sexually explicit conduct." *See* 18 U.S.C. § 2251(a). According to the government, that conduct – the surreptitious video recording of Minor A in the airplane lavatory – took place midway through the flight. Discovery provided by the government indicates that Minor A used the bathroom and saw the concealed phone at 9 AM, when the plane was in the airspace above New Jersey – hundreds of miles outside the District of Massachusetts. Pictures or videos of Minor A were never found on Mr. Thompson's phone or iCloud account.

Simply put, Mr. Thompson did not engage in any conduct in the District of Massachusetts that satisfied an element of the crime of sexual exploitation of a child or attempted sexual exploitation of a child. The conduct that constituted the offense occurred entirely in another district. Because the alleged crime of sexually exploiting a child and attempted sexual exploitation of a child was not committed in the District of Massachusetts, venue is not proper here, and the indictment must be dismissed as to Count One.

### b. Count Two – Possession of Child Pornography and Attempt (18 U.S.C. § 2252A(a)(5)(B))

The conduct constituting the offense of possessing of child pornography is simple. It is the act of possessing, or attempting to possess, material that contains one or more images of child pornography. For reasons described above, Mr. Thompson cannot be sure what the conduct is that the government is alleging constitutes a violation of 18 U.S.C. § 2252A. Critically, the indictment fails to allege what conduct that occurred *in the District of Massachusetts* constitutes this offense. The complaint affidavit offers some clues. It alleges that Mr. Thompson was in Boston, Massachusetts on September 2, 2023. It alleges that he possessed a phone on that day. It also

alleges that when FBI investigators searched that phone and the iCloud account associated with that phone weeks later, the iCloud account contained images and videos of minors using airplane lavatories, a minor traveling on an airplane (but not using the bathroom), and AI-generated images that the government claims depict child pornography. However, the government also includes facts in the complaint affidavit that the phone that Mr. Thompson allegedly possessed on September 2, 2023, was factory reset at approximately 9:30 AM that morning and that the device contained no images or videos when it was searched. The complaint affidavit does not assert that Mr. Thompson ever logged into his iCloud account or that Mr. Thompson knew those images existed. More importantly, the indictment alleges no facts supporting the conclusion that Mr. Thompson committed these, let alone any, criminal acts in this District.

The indictment fails to allege that Mr. Thompson committed any acts in the District of Massachusetts that constituted the crime of possession of child pornography or attempted possession of child pornography. Accordingly, there is no venue in this District to prosecute Count Two.

### III. Counts One and Two Must be Dismissed for Failure to State an Offense.

#### a. Count One – Sexual Exploitation of a Child and Attempt (18 U.S.C. § 2251(a))

Even if the Court disagreed with Mr. Thompson and found that venue is proper in the District of Massachusetts, Count One still must be dismissed for the additional reason that it fails to state an offense. Count One alleges no facts, but even if it did include facts – presumably the facts included in the complaint affidavit – Count One would still fail to allege that Mr. Thompson *used* (or employed, persuaded, induced, enticed, or coerced) Minor A to engage in *sexually explicit conduct*. Count One therefore must be dismissed for failure to state an offense.

Mr. Thompson is charged in Count One under two subsections of § 2251: 2251(a) and 2251(e). Section 2251(a) lays out the substance of the crime; 2251(e) is a sentencing provision. Section 2251(a) states, in relevant part, that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e).[4]

18 U.S.C. § 2251(a). To attempt to violate § 2251, a defendant must have the specific intent to produce a visual depiction of a minor engaged in "sexually explicit conduct" and take a substantial step towards completing that offense.

The term "sexually explicit conduct" is defined by statute as follows:

> "[S]exually explicit conduct" means actual or simulated—
> (i)     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (ii)    bestiality;
> (iii)   masturbation;
> (iv)   sadistic or masochistic abuse; or

---

[4] Section 2251(e) states that:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. Any organization that violates, or attempts or conspires to violate, this section shall be fined under this title. Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for not less than 30 years or for life.

Mr. Thompson has no qualifying prior offenses, so if he were convicted, he would be subject to the 15 year mandatory minimum.

> (v)　　lascivious exhibition of the anus, genitals, or pubic area of any person[.]

18 U.S.C. § 2256(2)(A). In Mr. Thompson's case, the indictment is devoid of factual specificity as to the manner by which he committed the offense alleged in Count One. However, based on the discovery provided to the defense so far, Mr. Thompson assumes that the government will attempt to prove its case under subsection (v) ("lascivious exhibition"). There are no allegations in the complaint affidavit, and no facts in the discovery, that could support an allegation that Mr. Thompson used, employed, persuaded, induced, enticed, or coerced Minor A to engage in sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse.

"Lascivious exhibition" is not defined by the statute. It is a "commonsensical term and there is no exclusive list of factors . . . that must be met for an image (or a film) to be lascivious." *United States v. Charriez-Rolon*, 923 F.3d 45, 52 (1st Cir. 2019). There are, however, certain factors that courts have considered relevant:

> (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her [or his] age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer.

*United States v. Amirault*, 173 F.3d 28, 31 (1st Cir. 1999). These so-called "*Dost* factors" (named for the case they were first enumerated in, *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir.1987)), have been widely adopted as the foundational definition of "lascivious exhibition."[5]

---

[5] Notably, the First Circuit is one of the few courts that have cautioned against using the *Dost* factors as the only definition of "lascivious exhibition." It has concluded that the *Dost* factors are "generally relevant and provide some guidance in evaluating whether the display in question is lascivious," but that they are "neither comprehensive nor necessarily applicable in every situation," and that "there may be other factors that are equally if not more important in determining whether a photograph contains a

Whether a surreptitiously recorded video depicting a nude minor engaging in everyday activities such as using the bathroom or taking a shower is a depiction of a minor engaging in "lascivious exhibition" of the genitals, and therefore "sexually explicit conduct," is currently the subject of a circuit split. On the one hand, the Seventh, Eight, and Ninth Circuits have held that such images can indeed be deemed to depict "sexually explicit conduct," based on the lascivious intent of the person who secretly captured the minor's innocuous activities. *See United States v. Donoho*, 76 F.4th 588 (7th Cir. 2023); *United States v. Boam*, 69 F.4th 601 (9th Cir. 2023); *United States v. McCoy*, 108 F.4th 639 (8th Cir. 2024). On the other, the D.C. Circuit has rejected that reading, following the statutory requirement that the video or image depict a minor engaging in sexual or sexually suggestive conduct. *See United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022).[6]

In *United States v. Hillie*, the defendant took surreptitious videos of a minor washing herself and engaging in other routine personal hygiene activities. *Id*. at 677-78. A jury found the defendant guilty of sexual exploitation of a child under 18 U.S.C. § 2251(a) even though the videos in question depicted no sexual or sexually suggestive conduct of any kind. *Id*. at 679. On appeal, Hillie argued there was insufficient evidence for conviction because none of the recordings depicted conduct that could be described as a "lascivious exhibition" of the anus, genitals, or pubic area (the only category of "sexually explicit conduct" at issue). *Id*.

---

lascivious exhibition." *Amirault*, 173 F.3d at 32. Nevertheless, the First Circuit does not prohibit the use of the *Dost* factors.

[6] The First Circuit does not appear to have ruled on this specific issue since *Hillie* was decided. Prior to *Hillie*, in *United States v. Goodman*, 971 F.3d 16 (1st Cir. 2020), the First Circuit reviewed a plea that involved similar facts to those in Mr. Thompson's case. There, the defendant pled guilty to violating 18 U.S.C. § 2251(a). *Goodman*, 971 F.3d at 17-19. The defendant argued on appeal that there was an insufficient factual basis for his conviction. *Id*. at 18-19. The First Circuit reviewed the plea for plain error and disagreed. It held that it was not plain error for the district court to conclude that the "factual foundation for Goodman's plea" – i.e., that he surreptitiously produced videos that "depict[ed] an eleven-year-old girl's genitals as she was undressing and entering and exiting the shower" – gave the district court "a reasoned basis to believe that the defendant actually committed the crime to which he [was] admitting guilt[,]" i.e., § 2251(a). *Id*.

The D.C. Circuit agreed with the defendant. It held that "lascivious exhibition" under § 2256(2)(A) requires displaying private parts "in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in *any* type of sexual activity." *Id*. at 685. That standard was not met by the videos in question in *Hillie*, the court explained, because even though those videos showed the minor's nude body, they only depicted the minor "engaged in ordinary grooming activities, some dancing, and nothing more." *Id*. at 686. Because the minor "never engage[d] in any sexual conduct whatsoever, or any activity connoting a sex act," "no rational trier of fact could find [the minor's] conduct depicted in the videos to be a 'lascivious exhibition of the . . . genitals' as defined by § 2256(2)(A)" and so acquittal was required as a matter of law. *Id*.

In reaching this decision, the D.C. Circuit relied on a line of Supreme Court cases that "provided guidance as to how to construe the same or similar phrasing" of "lascivious exhibition of the anus, genitals, or public area of any person." *Id*. at 681. In the first of these cases, *Miller v. California*, 413 U.S. 15, 17 (1973), the Supreme Court explained that governments can regulate works depicting patently offensive "sexual conduct specifically defined by . . . law," and it endorsed regulations of "ultimate sexual acts, normal or perverted, actual or simulated" and "representation[s] or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." In a companion case, *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973), the Court cautioned that, if the terms "lewd" or "lascivious" were vague, it would "construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific *hard core sexual conduct* given as examples in *Miller*." (emphasis added).

Then, in *New York v. Ferber*, 458 U.S. 747, 753, 774 (1982), the Court upheld a state law "directed at and limited to depictions of sexual activity involving children." New York's law used language similar to § 2251(a). It prohibited "the use of a child in a sexual performance," defined that performance to "include sexual conduct by a child," and defined "sexual conduct" as: "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." *Id*. at 750-51. The Court explained that to withstand First Amendment scrutiny, a child pornography law must "suitably limit[] and describe[]" "the category of 'sexual conduct' proscribed." *Id*. at 764. New York's law passed muster because the proscribed categories of "sexual conduct" were "directed at the hard core of child pornography," and "[t]he term 'lewd exhibition of the genitals' . . . was given in *Miller* as an example of a permissible regulation." *Id.* at 765, 773.

Next, in *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78-79 (1994), the Court concluded that Congress's exchange of "lewd" for "lascivious" in defining "sexually explicit conduct" (in § 2256) did not render the child pornography statute (§ 2252(a)(1) and (2)) unconstitutionally vague. The Court explained that "'[l]ascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller v. California* and in *Ferber*." *United States v. X-Citement Video, Inc*., 982 F.2d 1285, 1288 (9th Cir. 1992); *see also X-Citement Video*, 513 U.S. at 78-79 (adopting the reasoning of the Court of Appeals). By treating the two terms as synonyms, "the Court expressly engrafted the 'hard core' characterization of the prohibited 'lascivious exhibition of the genitals' from *Miller* onto the construction of the federal child pornography statute." *Hillie*, 39 F.4th at 682. Every member of the Court in *X-Citement Video* agreed that *Miller* and *Ferber* provided the interpretative key for what constitutes "sexually explicit conduct"; even Justice Scalia, dissenting, noted that "sexually

explicit conduct" pertained specifically to "hard-core pornography." *X-Citement Video*, 513 U.S. at 84 (Scalia, J., dissenting).

Finally, in *United States v. Williams*, 553 U.S. 285 (2008), the Court rejected an overbreadth challenge to the promotion of child pornography statute, 18 U.S.C. § 2252A(a)(3)(B), which "uses the same definition of 'sexually explicit conduct' as [§ 2251(a) and § 2252(a)(4)(B)]." *Hillie*, 39 F.4th at 683. The Court explained that "sexually explicit conduct" reaches only conduct akin to what was upheld in *Ferber* – i.e., hard core child pornography. *Williams*, 553 U.S. at 293, 296-97. And it mattered that Congress used the term "sexually explicit conduct," because "'sexually explicit conduct' connotes actual depiction of the sex act rather than merely the suggestion that it is occurring." *Id.* at 297. The Court in *Williams* "made clear that 'sexually explicit conduct' as used in the federal child pornography statutes must be construed consistently with the 'sexual conduct' prohibited in *Ferber*." *Hillie*, 39 F.4th at 683.

The D.C. Circuit summarized the impact of these cases as follows:

> In sum, *Ferber* explained that the Court had previously construed the phrase "lewd exhibition of the genitals" in *Miller*, and that the phrase referred to "the hard core of child pornography." *Ferber*, 458 U.S. at 764-65, 773, 102 S.Ct. 3348. In *X-Citement Video*, the Court found that the term "lascivious exhibition of the genitals" as currently used in § 2256(2)(A)(v), has the same meaning as "lewd exhibition of the genitals," as that phrase was construed in *Miller* and *Ferber*. *X-Citement Video*, 513 U.S. at 78–79, 115 S.Ct. 464. And in *Williams*, the Court reaffirmed that § 2256(2)(A)'s definition of "sexually explicit conduct" means essentially the same thing as the definition of "sexual conduct" at issue in *Ferber*, except that the conduct defined by § 2256(2)(A) must be, if anything, more "hard-core" than the conduct defined by the New York law at issue in *Ferber*, given that the federal statute prohibits "sexually explicit conduct" rather than merely "sexual conduct," as in the state law. *Williams*, 553 U.S. at 296, 128 S.Ct. 1830.

*Hillie*, 39 F.4th at 683. The *Miller* line of cases confirms that the federal child pornography laws passed constitutional scrutiny because they criminalized the documentation of children being sexually abused and because they specifically described hard core child pornography. It is against

this backdrop that the D.C. Circuit interpreted "lascivious exhibition of the anus, genitals, or pubic area of any person . . . to mean that the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity." *Hillie*, 39 F.4th at 685.

In an opinion concurring in the denial of the government's petition for rehearing en banc in *Hillie*, Judge Katsas carefully reiterated the D.C. Circuit's commonsense reading of § 2251(a): "Sexually explicit conduct" requires that the video depict sexual or sexually suggestive conduct, and "'lascivious exhibition' means revealing private parts in a sexually suggestive way . . . . A child who uncovers her private parts to change clothes, use the toilet, clean herself, or bathe does not lasciviously exhibit them." *Hillie*, 38 F.4th at 236-37 (Katsas, J.).

In reaching its decision, *Hillie* rejected the government's argument that "lascivious exhibition of the genitals, as defined in § 2256(2)(A), should be construed in accordance with the so-called *Dost* factors." *Hillie*, 39 F.4th at 686. In *Dost*, a district court in the Southern District of California interpreted the scope of "lascivious exhibition" in § 2256(2)(A). 686 F. Supp. at 832. The decision came in the mid-1980s, after *Miller* and *Ferber*, but before *X-Citement Video* and *Williams*. The court in *Dost* came up with the six extra-textual factors noted above to guide a jury "in determining whether a visual depiction of a minor constitutes a 'lascivious exhibition.'" *Id.* at 832.

*Hillie* cited three reasons why *Dost* is unpersuasive. First, it noted that *Dost*'s fundamental premise – "that the 1984 amendment of the definition of 'sexually explicit conduct' broadened the reach of the federal statute" – was "fatally flawed." *Hillie*, 39 F.4th at 687. In *Dost*, the district court concluded that when Congress amended the definition of "sexually explicit conduct" in 1984,

substituting the word "lascivious" for the word "lewd," Congress's intent "was to broaden the scope of the existing 'kiddie porn' laws." *Dost*, 636 F. Supp. at 831. *Hillie* noted that after *Dost* was decided, the Supreme Court rejected the suggestion that "lascivious" was broader than "lewd" in *X-Citement Video*, 513 U.S. at 78-79. The "wording change did not affect the scope of the statute," so *Dost*'s premise was flawed from the outset. *Hillie*, 39 F.4th at 687.

Second, *Hillie* criticized *Dost* for "completely ignor[ing]" Supreme Court precedent. In *Miller*, 413 U.S. at 27, and *12 200-Foot Reels of Super 8mm. Film*, 413 U.S. at 130 n.7, the Supreme Court had cabined "lewd exhibitions" to hard core sexual conduct. Instead of abiding by this construction, the district court in *Dost* "crafted its own definition." *Hillie*, 39 F.4th at 687.

Third, *Hillie* highlighted the fact that *Dost*'s sixth factor – "whether the visual depiction is intended or designed to elicit a sexual response in the viewer" – was "expressly rejected" by the Supreme Court in *Williams*. *Hillie*, 39 F.4th at 687-88. In *Williams*, the Supreme Court explained that the depiction must objectively meet the definition of "sexually explicit conduct"; "[w]here the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that is constitutes a 'lascivious exhibition of the genitals,' the statute has no application." *Hillie*, 39 F.4th at 688 (citing *Williams*, 553 U.S. at 301). *Hillie* explained that *Dost*'s sixth factor impermissibly allows a jury to convict based on finding that an image "portrays sexually *implicit* conduct in the mind of the viewer," rather than requiring the jury to find the image objectively contains "sexually *explicit* conduct performed by a minor or by an adult with a minor." *Hillie*, 39 F.4th at 688.

Although it is only persuasive on this Court, the D.C. Circuit's decision in *Hillie* holding comports with the plain statutory language in § 2251(a), principles of statutory construction, as well as binding Supreme Court precedent. A secretly recorded video of a minor using the toilet

does not, as a matter of law, depict "sexually explicit conduct" under § 2256(2)(A). Accordingly, the government's allegations in Count One fail to allege an offense under 18 U.S.C. § 2251(a). Count One must therefore be dismissed.

### b. Count Two – Possession of Child Pornography and Attempt (18 U.S.C. § 2252A(a)(5)(B)

Count Two must also be dismissed for failure to state an offense. To the extent that the government intends to proceed on the theory that videos and images found in Mr. Thompson's iCloud account of Minors B, C, D, or E using the toilet on an airplane constitute "child pornography," Count Two must be dismissed for similar reasons as Count One. If, on the other hand, the government intends to use the AI-generated images as the basis of Count Two, Count Two must be dismissed because "virtual child pornography" does not, as a matter of law, constitute child pornography under the federal statute.

As noted above, Mr. Thompson is charged in Count Two with violating 18 U.S.C. § 2252A(a)(5)(B) (the substance of the crime) and (b)(2) (a sentencing provision). Section 2252A(a)(5)(B) states that any person who

> knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[,]

shall be punished as provided in the statute. *See* 18 U.S.C. § 2252A(a)(5)(B).

"Child pornography" is defined by statute as follows:

> Child pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where –

> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; or
>
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct[.]

18 U.S.C. § 2256(8).[7] The term "sexually explicit conduct" as it appears in this section has two different definitions. In § 2256(8)(A), "sexually explicit conduct" means:

> [A]ctual or simulated—
> (i)     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (ii)    bestiality;
> (iii)   masturbation;
> (iv)   sadistic or masochistic abuse; or
> (v)    lascivious exhibition of the anus, genitals, or pubic area of any person[.]

18 U.S.C. § 2256(2)(A). As noted above, this is the same definition of sexually explicit conduct that is used for § 2251 in Count One.

Critically, the term "sexually explicit conduct" has a different meaning in § 2256(8)(B). In that subsection, "sexually explicit conduct" means:

> (i)     [G]raphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
> (ii)    [G]raphic or lascivious simulated;
>       I.    bestiality;
>      II.   masturbation; or
>    III.  sadistic or masochistic abuse; or
> (iii)   [G]raphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person[.]

18 U.S.C. § 2256(2)(B).

---

[7] Section 2256(8) has a third subsection (subsection (c)) that does not appear to be relevant to this case. That subsection defines child pornography as a visual depiction "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(c).

Mr. Thompson can only guess at this juncture as to what "child pornography" the government is alleging he possessed and attempted to possess in Count Two. If the government alleges that the videos and images of minors using the bathroom on airplanes constitute "child pornography," it would have to make that argument under § 2256(8)(A), using the definition of "sexually explicit conduct" from § 2256(2)(A). As argued above, recordings of a minor using the bathroom do not, as a matter of law, depict "sexually explicit conduct" under § 2256(2)(A). Assuming that these are the "visual depictions" that form the basis of Count Two, Count Two must be dismissed for the same reasons as Count One.

If, however, the government proceeds on a theory that the AI-generated images constitute "child pornography," as that term is defined in §§ 2256(8)(B) and 2256(2)(B), Count Two must be dismissed pursuant to *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). In *Ashcroft*, the Supreme Court held that a federal law that extended the definition of "child pornography" to materials that *appeared* to (but did not actually) depict a minor engaging in "sexually explicit conduct" was unconstitutionally overbroad. *Id*. at 241, 256. The Court reached this decision in part because this so-called "virtual child pornography," which includes computer-generated images, "do[es] not involve, let alone harm, any children in the production process." *Id*. at 241. Despite Congress finding that "virtual child pornography" could "threaten children in other, less direct, ways," that rationale was not sufficient to pass constitutional muster. *Id.* The Court struck down the law prohibiting "virtual child pornography" despite the government's argument that these types of images are "virtually indistinguishable" from child pornography. *Id.* at 249-50.

In *Ashcroft*, the Supreme Court could have decided to make "virtual child pornography" an additional category of unprotected speech. It chose not to. It follows that to the extent that the indictment alleges that the possession of AI-generated images amounted to the possession of child

pornography under 18 U.S.C. § 2252A, the indictment fails to state an offense and must be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Thompson respectfully requests that the Court dismiss Counts One and Two of the indictment.

Respectfully submitted,

*/s/ Scott Lauer*
Scott Lauer

*/s/ Caitlin Jones*
Caitlin Jones

Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
scott_lauer@fd.org
caitlin_jones@fd.org

## CERTIFICATE OF SERVICE

I, Scott Lauer, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 11, 2024.

*/s/ Scott Lauer*
Scott Lauer